IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CR-227-FL-1
5:17-CV-420-FL

| | | |
|---|---|---|
| JAMES FORRESTER DEES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **ORDER and** |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This case comes before the court, in part, on: (1) the pro se motion (or petition)[1] (D.E. 82) by petitioner James Forrester Dees ("petitioner" or, in context, "defendant") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") filed on 16 August 2017[2]; (2) the government's motion (D.E. 88) to dismiss the petition filed on 27 September 2017, to which petitioner responded (D.E. 91) on 18 October 2017[3]; and (3) petitioner's amended motion (D.E. 99) to vacate, set aside, or correct his sentence pursuant to § 2255 on 18 May 2018.[4] Also before the court is petitioner's motion (D.E. 94), filed on 14 February 2018, to unseal his plea agreement.

Petitioner's motion to unseal his plea agreement was referred to the undersigned magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). *See* 1 Mar. 2018 2nd Non-Public D.E. The other motions were referred to the undersigned magistrate judge for a memorandum and

---

[1] The court uses the term "petition" and "motion" interchangeably herein to refer to petitioner's requests under 28 U.S.C. § 2255.

[2] Petitioner filed a memorandum in support of his motion. D.E. 82-1.

[3] The government filed a memorandum in support of its motion to dismiss. D.E. 89.

[4] Petitioner again filed a memorandum in support of his motion (D.E. 99-1) as well as a letter he wrote to his attorney, Rudolph A. Ashton, III, dated 2 January 2018 (D.E. 99-2).

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings ("§ 2255 Rules"). 17 Nov. 2017 Public D.E.; 13 June 2018 Public D.E.

## **BACKGROUND**

### I. **PETITIONER'S CONVICTION AND SENTENCING**

On 11 August 2015, petitioner was charged in a two-count indictment with one count of possession of a firearm by a convicted felon and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(g)(1), 924, and 2 (Count One); and one count of possession of a stolen firearm and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), and 2 (Count Two). Indict. (D.E. 1) 1-2.

On 2 September 2015, attorney Rudolf A. Ashton ("Ashton") entered a notice of appearance on petitioner's behalf. Ashton's Appear. Notice (D.E. 26). On 17 December 2015, pursuant to a plea agreement, dated 11 November 2015, petitioner pleaded guilty before a magistrate judge to the charge in Count One of the indictment with the remaining count to be dismissed at sentencing. *See* Minute Entry dated 17 Dec. 2015; Plea Agmnt. (D.E. 40). Petitioner's plea agreement contained an appeal waiver stating that petitioner agreed:

> To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal the conviction and whatever sentence is imposed on any ground, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Plea Agmnt. ¶ 2.c.

The presence investigation report ("PSR") determined petitioner's guideline range to be 78 to 97 months' imprisonment on Count One, based on a total offense level of 27 and criminal history category II.[5]  PSR (D.E. 54) ¶ 68.  In computing petitioner's base offense level, it was determined that petitioner had a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), because petitioner had committed the instant offense subsequent to sustaining one felony conviction for either a crime of violence or a controlled substance offense.  PSR ¶ 55.  In computing petitioner's total offense level, the following three enhancements were included: (1) a 4-level increase because the offense involved between 8 and 24 firearms, pursuant to U.S.S.G. § 2K2.1(b)(1)(B) (*see* PSR ¶ 56); (2) a 2-level increase because the firearms were stolen, pursuant to U.S.S.G. § 2K2.1(b)(4)(A) (*see* PSR ¶ 57); and (3) a 4-level increase for using or possessing the firearms in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6)(B) (*see* PSR ¶ 58).

At sentencing on 5 May 2016 (Minute Entry dated 5 May 2016 (D.E. 58)), the court adopted the PSR (Statement of Reasons (D.E. 64) 1) and sentenced petitioner to a term of 86 months' imprisonment and 3 years' supervised release (J. (D.E. 63) 1-2, 4) on Count One.  Count Two was dismissed.  J. 1.

On 12 May 2016, petitioner filed a notice of appeal.  D.E. 65.  On 21 December 2016, the Fourth Circuit granted the government's motion to dismiss the appeal on the ground that "the issues [petitioner sought] to raise on appeal [fell] squarely within the compass of his waiver of appellate rights."  21 May 2016 Ord. (D.E. 74) 1.

---

[5] Petitioner's guideline range was determined using the United States Sentencing Guidelines effective 1 November 2015 ("U.S.S.G.").  *See* PSR ¶ 54.

On 17 March 2017, petitioner filed a petition for writ of certiorari (Appeal Remark dated 22 Mar. 2017 (D.E. 77)), which was denied on 24 April 2017 (Appeal Remark dated 24 Apr. 2017 (D.E. 78)).

## II.    THE § 2255 MOTIONS

In his original motion, executed under penalty of perjury, petitioner asserts the following seven claims: (1) the six-level increase petitioner received to his base offense level at sentencing for committing the instant offense subsequent to sustaining a felony conviction for a crime of violence was unconstitutional pursuant to *United States v. Gardner*, 823 F.3d 793 (4th Cir. 2016) ("Claim One"); (2) the two-level enhancement for the possession of stolen firearms and the four-level enhancement for possessing the firearms in connection with another felony offense were attributed to petitioner in error ("Claim Two"); (3) petitioner's attorney was ineffective for failing to inform petitioner of his right to pursue pretrial motions, specifically, a motion to suppress ("Claim Three"); (4) petitioner's attorney was ineffective for failing to inform petitioner that by signing the plea agreement, petitioner was waiving his right to appeal as well as other rights he was entitled to receive, and thus, petitioner did not enter into the plea agreement knowingly, voluntarily, or intelligently ("Claim Four"); (5) petitioner's attorney was ineffective for failing to inform petitioner of the elements of the charge to which he was pleading guilty ("Claim Five"); (6) the presiding district judge committed four felonies when she failed to inform petitioner of the court's jurisdiction at sentencing in violation of 18 U.S.C. §§ 1001, 2505, 2331 and Section 800 of the Patriot Act ("Claim Six"); and (7) the presiding district judge and petitioner's attorney committed fraud regarding payment the attorney received for representing petitioner on appeal ("Claim Seven").

In his response to the government's motion to dismiss the motion, petitioner raised the additional claim that the magistrate judge lacked jurisdiction to take petitioner's guilty plea ("Claim Eight").

The claims in petitioner's amended motion, also executed under penalty of perjury, are largely addressed in petitioner's original motion except for the following two unique claims: (1) petitioner's attorney was ineffective for failing to understand that the appeal waiver in petitioner's plea agreement would prejudice petitioner by preventing review of his illegal sentence ("Claim Nine"); and (2) the government engaged in prosecutorial misconduct when it included an appeal waiver in petitioner's plea agreement knowing that the Fourth Circuit in *Gardner* would reach a decision that would purportedly reduced the sentence he would otherwise receive under the plea agreement ("Claim Ten"). He also asserts that he is entitled to appointment of counsel and a hearing.

## ORDER ON MOTION TO UNSEAL

In his motion to unseal his plea agreement, petitioner requests that the court unseal his plea agreement and order the Clerk of Court to provide petitioner with a copy. Pet'r's Mot. to Unseal 1. Petitioner asserts that he needs a copy of his plea agreement in order to file his motion pursuant to § 2255, namely, to address his contention that his attorney was ineffective for failing to inform him of the ramifications of the appeal waiver in the plea agreement. *Id.* ¶ 5. Petitioner further maintains that "a copy of the plea agreement is necessary in order to evaluate exactly what was agreed to by [petitioner's] attorney and the Assistant United States Attorney." *Id.* ¶ 7.

Petitioner has not demonstrated a particularized need for the document. *See, e.g.*, *United States v. Butler*, 178 F. App'x 327, 327 (4th Cir. 2006) (denying access to documents because petitioner "failed to demonstrate a particularized need for the documents, and he could rely on his

own recollection in preparing a collateral attack on his conviction and sentence" (citing *United States v. Shoaf*, 341 F.2d 832, 835 (4th Cir. 1964))); *Morgan v. United States*, No. 2:01-CR-1-1BO, 2011 WL 1792555, at *1 (E.D.N.C. 10 May 2011) (dismissing petitioner's motion to unseal the Statement of Reasons because petitioner failed to show a particularized need for the document).

Petitioner merely makes general assertions of need. Moreover, while petitioner contends that he requires a copy of the plea agreement to address the ramifications of the appeal waiver, petitioner's motion and amended motion clearly demonstrate that he is knowledgeable of the plea waiver and its terms. Additionally, petitioner stated under oath at his arraignment that his attorney read him the plea agreement and that he understood everything in his plea agreement, including the appeal waiver. Arraign. Tr. 20:2-4; 20:17 to 21:3. Therefore, petitioner was aware of and understood the terms that were agreed upon in the plea agreement.

Accordingly, petitioner's motion (D.E. 94) to unseal the plea agreement and his request for copies is DENIED. *See Hands v. United States*, No. 7:11-CR-98-FL-1, 2016 WL 4995074, at *3 (E.D.N.C. 19 Sept. 2016) (denying petitioner's request to provide copies of exhibits on the basis that petitioner did not demonstrate a need for the copies in his motion).

## MEMORANDUM AND RECOMMENDATION ON § 2255 MOTIONS

### I.   APPLICABLE LEGAL PRINCIPLES

#### A.   Standard of Review for § 2255 Motions

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a

preponderance of the evidence." *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C.) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")), *rep. & recomm. adopted*, 2013 WL 5570956, at *5 (9 Oct. 2013). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United State*s *v. Rashaad*, 249 F. App'x 972, 973 (4th Cir. 2007) (citing *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)).

### B.     Motions to Dismiss under Rule 12(b)(6) in § 2255 Proceedings

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at *4 (4th Cir. 2 Apr. 1990); Rule 12, § 2255 Rules (expressly permitting application of the Federal Rules of Civil Procedure where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, "plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). "'[V]ague and conclusory allegations contained in a § 2255 [motion] may be disposed of without further investigation by the District Court.'" *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

## C.    Motions to Amend under Rule 15 in § 2225 Proceedings

As previously discussed, § 2255 proceedings are, in general, governed by the Federal Rules of Civil Procedure. *See* Rule 12, § 2255 Rules; Fed. R. Civ. P. 81(a)(4). Moreover, 28 U.S.C. § 2242 specifically provides that a § 2255 petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; *see also United States v.*

*MacDonald*, 641 F.3d 596, 616 n.12 (4th Cir. 2011) ("Rule 15 is applicable to § 2255 motions by way of 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Rule 12 of the [§ 2255 Rules].").

Where, as here, more than 21 days have passed after service of the government's motion to dismiss, Rule 15(a)(2) permits amendment of the petition only with the government's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). The Rule further provides that the court "should freely give leave when justice so requires." *Id.* Rule 15 is a "liberal rule [that] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Intown Props. Mgmt., Inc. v. Transcom, Ins. Co.*, 271 F.3d 164, 170 (4th Cir. 2001) (holding that Rule 15 should be construed liberally "so that claims can be adjudicated on the merits"). Leave to amend is to be granted in the absence of "bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (internal citations omitted). An amendment is deemed to be futile if it would not withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (holding that if an amended complaint could not withstand a motion to dismiss, the motion to amend should be denied as futile).

### D. Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id*. at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* Further, "[a] petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations." *Hunter v. United States*, Civ. No. 1:09cv472, Crim. No. 1:06cr251-3, 2010 WL 2696840, at *3 (W.D.N.C. 6 July 2010).

Concerning the second prong, a petitioner must demonstrate that he was prejudiced by the ineffective assistance. *Strickland*, 466 U.S. at 692. Specifically,

> [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The court may address the prejudice prong before the performance prong or even address only one prong if the petitioner has made an insufficient showing on the other prong. *Id.* at 697. In the sentencing context, "[p]rejudice exists when an error results in a longer sentence than would otherwise have been imposed. *United States v. Smith*, 497 F. App'x 269, 272 (4th Cir. 2012). With respect to a guilty plea, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## II. ABSENCE OF NEED FOR AN EVIDENTIARY HEARING

The court has considered the record in this case and applicable authority to determine whether an evidentiary hearing is needed to resolve the matters before the court. The court finds that the existing record clearly shows that petitioner is not entitled to relief on his claims and that an evidentiary hearing is not needed. The court will therefore proceed without an evidentiary hearing.

## III. CLAIM FOUR: COUNSEL FAILED TO INFORM PETITIONER OF APPEAL WAIVER

Petitioner contends that his attorney was ineffective because he failed to review the plea agreement with him and, specifically, failed to inform him of the appeal waiver contained in the plea agreement. Pet'r's § 2255 Mot. 5; Pet'r's Mem. in Support 3-4; Pet'r's Mem. in Support of Am. Mot. 3-4. Petitioner argues that he cannot read and write and that his attorney merely informed him that the plea agreement allowed him to plead guilty to Count One and of the sentence he could receive. Pet'r's Mem. in Support 3-4. Thus, petitioner maintains that his guilty plea was not knowing, voluntary, and intelligent. *Id.* at 5-6; Pet'r's Mem. in Support 3-4 of Am. Mot. Petitioner's argument is without merit.

"[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, as long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). "A voluntary and intelligent guilty plea is an admission of all the elements of a formal criminal charge . . . and constitutes an admission of all material facts alleged in the charge." *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (internal quotation marks and citations omitted). "Statements that a defendant makes to the court during his guilty plea hearing can serve as strong evidence that a waiver was knowing and voluntary. *United States v. Braxton*, 358 F. Supp. 2d 497, 500 (W.D. Va. 14 Feb. 2005) (citing *United States v. Brown*, 232 F.3d 399, 405-06 (4th Cir. 2000)). "'Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid.'" *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013) (quoting *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012)).

During petitioner's arraignment, at which petitioner pled guilty pursuant to the plea agreement, petitioner, his attorney, and the presiding magistrate judge had the following conversation:

The Court: All right. Now, there appears to be a plea agreement in this case, is that right, Mr. Ashton?

Mr. Ashton: That is, Your Honor.

The Court: Okay. Were all formal plea offers by the government conveyed to [petitioner]?

Mr. Ashton: They were.

The Court: Okay. And it's [petitioner's] intention to plead guilty to count one, is that right?

Mr. Ashton: That's correct, Your Honor.

The Court: Okay. Now, [petitioner], I have been provided an eight page document in your case. This document is entitled memorandum of plea agreement. It appears to be signed by you, by Mr. Ashton, your lawyer, and Mr. Bennett from the U.S. Attorney's Office.

[Petitioner]: Yes, sir.

The Court: And this — from this document, it appears your intention is to plead guilty to count one of the indictment.

Now, [petitioner], sir, did you sign this document?

[Petitioner]: Yes, sir.

The Court: And is it your intention to plead guilty to count one?

[Petitioner]: Yes, sir.

The Court: Have you had an opportunity to review and to discuss this plea agreement with your attorney and did you, in fact, do so before you signed it?

[Petitioner]: Yes, sir.

The Court: Did your attorney read this document to you?

[Petitioner]:  Yes, sir.

The Court:  Now, [petitioner], does this plea agreement represent in its entirety, any and all agreements that you have with the United States and the U.S. Attorney?

[Petitioner]:  Yes, sir.

The Court:  Okay.  Are there any other agreements that you have with the United States or the U.S. Attorney?

[Petitioner]:  No, sir.

The Court:  I just want to make sure that this is the only agreement that you have?

[Petitioner]:  Yes, sir.

The Court:  Is that right?

[Petitioner]:  Yes, sir.

The Court:  Okay.  Now, [petitioner], did you understand the terms, the language, the words, the sentences, even any legal phrases that are used in this plea agreement after you discussed it with Mr. Ashton?

[Petitioner]:  Yes, sir, he explained it to me pretty good.

The Court:  Okay.  Now, do you understand, [petitioner], that by entering into this plea agreement and entering a plea of guilty, that you will have waived or given up your right to appeal or to collaterally attack all or a part of your sentence?

[Petitioner]:  Yes, sir.

Arraign. Tr. 19:9 to 21:3.

The court also found that petitioner was "fully competent and capable of entering an informed plea"; his guilty plea was knowing and voluntary; and the plea was "supported by an independent factual basis containing each of the essential elements of the offense charged." *Id.* at 26:14-21.  The court then accepted petitioner's guilty plea, adjudged him guilty, and conditionally approved the plea agreement.  *Id.* at 26:22-25.

The representations made by petitioner at his arraignment "carry a strong presumption of veracity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Lemaster*, 403 F.3d at 221. Petitioner's sworn statements at his arraignment contradict his argument that his attorney failed to review the plea agreement with him and failed to inform him of the appeal waiver. "[I]n the absence of extraordinary circumstances, . . . allegations in a § 2255, motion that directly contradict a petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Lemaster*, 403 F.3d at 221. Petitioner has not demonstrated or even alleged the presence of extraordinary circumstances. Thus, petitioner has not overcome the presumption, and the court finds, that his attorney read the plea agreement to him and that he understood the plea agreement, including the appeal waiver in it.

Accordingly, the court finds meritless petitioner's contention that his counsel was ineffective for not informing him of the appeal waiver in his plea agreement and that his guilty plea was not knowing, voluntary, or intelligent as a result. Claim Four should therefore be dismissed.

## IV.  CLAIM THREE: COUNSEL FAILED TO INFORM PETITIONER OF RIGHT TO PURSUE PRETRIAL MOTIONS

In Claim Three, petitioner asserts that his counsel was ineffective for failing to inform him of his right to pursue pretrial motions, citing specifically a motion to suppress. Pet'r's Mem. in Support 4. Petitioner, though, does not identify what evidence he would have sought to suppress or cite evidence showing that such a motion would have been successful. Other than a motion to suppress, petitioner does not specify what other pretrial motions he would have allegedly pursued.

Petitioner's conclusory allegations fail to show that his attorney's actions were below reasonable standards nor has he shown that but for his attorney's alleged failure, there was a

reasonable probability that petitioner would have gone to trial instead of pleading guilty. Accordingly, Claim Three should be dismissed.

## V. CLAIM FIVE: COUNSEL FAILED TO INFORM PETITIONER OF THE ELEMENTS OF THE CHARGE TO WHICH HE WAS PLEADING GUILTY

In Claim Five, petitioner alleges that his attorney failed to inform him of the elements of the charge to which he pled guilty. Pet'r's Mem. in Support 5. Thus, petitioner argues that the court accepted an illegal and unconstitutional plea. *Id.* at 5. Petitioner's contentions are meritless.

The record clearly demonstrates that, as addressed above, at his arraignment petitioner stated under oath that he understood his plea agreement and that his attorney had read the plea agreement to him. Further, the plea agreement itself explicitly stated the elements of the charge to Count One, the count to which petitioner was pleading guilty. Plea Agmnt. ¶ 3.a.(3).

Additionally, in the colloquy between the court and petitioner, the court informed petitioner of the crime with which he was charged in Count One as follows:

> The Court: Okay. Did you receive a copy, [petitioner], of the indictment in this case charging you with two counts?
>
> [Petitioner]: Yes, sir.
>
> The Court: And did you understand the two counts that have been charged against you?
>
> [Petitioner]: Yes, sir.
>
> The Court: Do you want me to read the indictment to you aloud or do you waive the reading of it?
>
> [Petitioner]: I waive the reading.
>
> The Court: Okay. I am, however, required to remind you of any maximum possible penalty, not the guidelines, but any maximum possible penalty for each count that you face including any mandatory minimum penalty.

You know, reading the charges is not onerous. I'm going to read those aloud then I'll call on Mr. Bennett, [petitioner], to remind you of the maximum penalty you face if convicted of each of these counts.

[Petitioner]: Yes, sir.

The Court: Okay. [Petitioner], count one is where the government alleges the following, and I'll just read it word-for-word.

Count one, on or about February 2nd, 2015, in the Eastern District of North Carolina, James Forrester Dees and Robert Clifford Yarger, defendants herein, aiding and abetting each other, each having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce firearms in violation of Title 18 United States Code sections 922(g)(1), 924 and two.

Count two, on or about February 2nd, 2015, in the Eastern District of North Carolina, James Forrester Dees and Robert Clifford Yarger, defendants herein, aiding and abetting each other, knowingly possessed stolen firearms which had been shipped and transported in interstate commerce before they were stolen, knowing and having reasonable cause to believe the firearms were stolen, in violation of Title 18 United States Code sections 922(j), 924(a)2 and two.

Mr. Bennett, could you remind [petitioner] as to the maximum punishment he faces if convicted of each of those charges?

Mr. Bennett: Your honor, thank you. Excuse me. Count one, felon in possession carries the following standard penalty, a maximum term of imprisonment of ten years. A fine of $250,000 or both such fine and imprisonment. Three years of supervised release following imprisonment. Should supervised release be revoked the possibility of two additional years in prison. The required $100 special assessment. The possibility of restitution.

However, your honor, if the defendant's prior criminal history qualifies him for sentencing under the armed career criminal act, Title 18 United States Code Section 924(e), the penalty rises to a mandatory minimum sentence of 15 years in prison, up to maximum term of life in prison. A fine of $250,000 or both such fine and imprisonment. Five years of supervised release following imprisonment. Should supervised release be revoked the possibility of five additional years in prison. The required $100 special assessment and the possibility of restitution.

Count two, your honor, possession of stolen firearms carries a maximum of ten years in prison. A fine of $250,000 or both such fine and imprisonment. Three years of supervised release following imprisonment. Should supervised release be revoked the possibility of two additional years in prison. The required $100 special assessment and the possibility of restitution.

The Court: All right. Now, [petitioner], do you understand the two charges filed against you in this case as well as the maximum punishment you face if convicted of those charges?

[Petitioner]: Yes, sir.

Arraign. Tr. 16:6 to 18:24.

As noted above, representations made by petitioner at his arraignment "carry a strong presumption of veracity." *Blackledge*, 431 U.S. at 74; *Lemaster*, 403 F.3d at 221. Petitioner's contradictory statements in his petition are thus "'palpably incredible' and 'patently frivolous or false.'" *Lemaster*, 403 F.3d at 221.

Moreover, after being fully informed of the elements of the crime in Count One with which he was charged, as well as the elements of the crime charged in Count Two, petitioner still pled guilty. Thus, he has not shown he was prejudiced by his attorney's alleged failure to inform him of the elements of the crime charged in Count One (or, for that matter, Count Two). Claim Five should accordingly be dismissed.

## VI.    CLAIMS ONE AND TWO: THE COURT ERRED IN CALCULATING PETITIONER'S GUIDELINE RANGE

In Claim One, petitioner alleges that the six-level increase he received in his base offense level at sentencing, pursuant to U.S.S.G. § 2K2.1(a)(4)(A),[6] for committing the instant offense subsequent to sustaining a felony conviction for North Carolina common law robbery, which the court treated as a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a) and thereby within the scope of U.S.S.G. § 2K2.1(a)(4)(A), *see* PSR ¶ 55, was unconstitutional under *Gardner*.

---

[6] U.S.S.G. § 2K2.1 provides in relevant part for a base offense level of 20 for unlawful possession of firearms if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance." U.S.S.G. § 2K2.1(a)(4)(A). The first application note for this guideline states that "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 app'n note 1. If § 2K2.1(a)(4)(A) had not been applicable, § 2K2.1(a)(6) would have applied. It specifies a base offense level of 14. U.S.S.G. § 2K2.1(a)(6).

Pet'r's § 2255 Mot. 4; Pet'r's Mem. in Support 3. *Gardner* held that North Carolina common law robbery does not qualify as a "violent felony" under the provisions of the ACCA, 18 U.S.C. § 924(e)(1), (2)(B), that impose a mandatory minimum term of imprisonment of 15 years for possession of a firearm by a convicted felon when the felon has three previous convictions for a violent felony. *Gardner*, 823 F.3d at 804. In Claim Two, petitioner contends that the two-level enhancement he received for possession of stolen firearms, pursuant to U.S.S.G. § 2K2.1(b)(4)(A) (*see* PSR ¶ 57), and the four-level enhancement he received for possessing the firearms in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6)(B) (*see* PSR ¶ 58), were attributed to him in error. Pet'r's Mem. in Support 2-3. Both claims are barred by the waiver provision in petitioner's plea agreement, and are therefore subject to dismissal on this ground alone.

Claim One is also subject to dismissal as meritless. North Carolina common law robbery comes within the definition of "crime of violence" under U.S.S.G. § 4B1.2(a) and thereby within the scope of U.S.S.G. § 2K2.1(a)(4)(A). Specifically, North Carolina common law robbery is encompassed within the term "robbery" which is an offense enumerated in the first application note to U.S.S.G. § 4B1.2 and thereby included in the definition of "crime of violence" as used in U.S.S.G. § 2K2.1(a)(4)(A). *See United States v. Gattis*, 877 F.3d 150, 156 (4th Cir. 2017) (interpreting the version of U.S.S.G. § 4B1.2. after amendment in 2016 moving the enumeration of "robbery" as an included offense out of the application note into the guideline itself).

## VII. CLAIM SIX: PRESIDING DISTRICT JUDGE COMMITTED FELONIES IN HER FAILURE TO INFORM PETITIONER OF THE COURT'S JURISDICTION

In Claim Six, petitioner alleges that the presiding district judge committed four felonies by failing to inform him of the court's jurisdiction at sentencing in violation of 18 U.S.C. §§ 1001, 2505, 2331 and Section 800 of the Patriot Act. Pet'r's § 2255 Mot. 6. But petitioner does not

claim that the court in fact lacked jurisdiction in the underlying criminal case. Claim Six is meritless.

First, 18 U.S.C. § 2505 does not exist. Secondly, the other statutes cited by petitioner do not pertain to the court's jurisdiction over petitioner's criminal case. Title 18 U.S.C. § 1001 criminalizes false statements made to each of the branches of the federal government. Title 18 U.S.C. § 2331 is entitled "Definitions" and appears in Chapter 113B on terrorism. Section 800 of the Patriot Act is entitled "Strengthening the Criminal Laws Against Terrorism" and does not address the court's jurisdiction in criminal cases such as petitioner's. Thus, none of the statutes cited by petitioner address the court's jurisdiction or lack thereof over petitioner's criminal case.[7]

Accordingly, petitioner has failed to state a claim that the presiding judge committed fraud affecting the court's jurisdiction in petitioner's case, and Claim Six should be dismissed.

## VIII. CLAIM SEVEN: PRESIDING DISTRICT JUDGE AND PETITIONER'S COUNSEL COMMITTED FRAUD

In Claim Seven, petitioner contends that the presiding district judge and petitioner's attorney committed fraud regarding payment the attorney received for representing petitioner on appeal. Pet'r's § 2255 Mot. 8; Pet'r's Mem. in Support 4. Specifically, petitioner argues that his attorney should not have received payment for representing him on appeal because his attorney should have known that petitioner could not appeal because of the appeal waiver provision in the plea agreement. Pet'r's Mem. in Support 4.

---

[7] Although not clearly requesting the presiding district judge's recusal, petitioner notes that due to her alleged violations as discussed above, "the judge should have recused herself." Pet'r's § 2255 Mot. 6. However, as found above, petitioner has failed to state a claim that the district judge committed such violations. Petitioner does not state any further grounds for recusal by the district judge. Accordingly, to the extent that petitioner is asserting a request that the presiding district judge recuse herself, the request should be denied. *See* 28 U.S.C. § 455 (providing circumstances in which a judge must disqualify himself or herself).

Title 18 U.S.C. § 3006A(c) provides for representation of an indigent defendant from his initial appearance through an appeal. Title 18 U.S.C. § 3006A(d) also provides for payment of an appointed attorney through an appeal. There is no restriction on payment of appointed attorneys based on whether an appeal is successful or not. Additionally, the fact that petitioner's attorney was paid for representing him on appeal has no bearing on petitioner's sentence. Accordingly, Claim Seven should be dismissed.

IX. **CLAIM EIGHT: MAGISTRATE JUDGE LACKED JURISDICTION TO TAKE PETITIONER'S PLEA**

In Claim Eight, petitioner contends that the magistrate judge lacked jurisdiction to take his guilty plea. Pet'r's Resp. 1-2. This claim is meritless.

Petitioner signed a consent to proceed before a magistrate judge on the date he was arraigned, 17 December 2015. Consent to Proceed (D.E. 39). Thus, the magistrate judge appropriately took petitioner's guilty plea. *United States v. Benton*, 523 F.3d 424, 431-33 (4th Cir. 2008) (holding that 28 U.S.C. § 636(b)(3) constitutionally gives magistrate judges authority to take guilty pleas with a defendant's consent); *United States v. Obsorne*, 345 F.3d 281, 285-90 (4th Cir. 2003) (same). Accordingly, Claim Eight should be dismissed.

X. **PETITIONER'S AMENDED § 2255 MOTION**

As noted above, in petitioner's amended § 2255 motion, he seeks to assert two additional claims, Claims Nine and Ten. He also requests a hearing and appointed counsel. Each of these matters is addressed in turn below.

A. **Claim Nine**

In Claim Nine, petitioner contends that his attorney was ineffective for failing to understand that the appeal waiver would prevent review of his sentence. Pet'r's Mem. in Support

of Am. Mot. 4-5. He contends that his attorney's failure to understand the appeal waiver prevented him from seeking review of his purportedly illegal sentence. *Id.* at 4.

Petitioner's statements at his arraignment belie his contention that any misunderstanding by his counsel of the appeal provision prejudiced him. These include petitioner's statements that his attorney discussed the plea agreement with him prior to petitioner's signing it, that his attorney read the plea agreement to him, that petitioner understood the plea agreement, and that petitioner specifically understood that by entering into the plea agreement he had waived his right to appeal and collaterally attack his sentence. Arraign. Tr. 19:23 to 20:4; 20:17 to 21:3. Thus, petitioner has not shown that he was prejudiced by the alleged deficiency in his attorney's performance. Because Claim Nine is therefore without merit, amendment of petitioner's § 2255 motion to include it would be futile.

**B.     Claim Ten**

In Claim Ten, petitioner asserts that the government engaged in prosecutorial misconduct when it included the appeal waiver in petitioner's plea agreement knowing how the Fourth Circuit would decide *Gardner*. Pet'r's Mem. in Support of Am. Mot. 5. As discussed, *Gardner* held that North Carolina common law robbery does not qualify as a "violent felony" under the provisions of the ACCA, 18 U.S.C. § 924(e)(1), (2)(B), imposing a mandatory minimum term of imprisonment of 15 years for possession of a firearm by a convicted felon when the felon has three previous convictions for a violent felony. *Gardner*, 823 F.3d at 804. Petitioner argues that if he had the benefit of the decision in *Gardner*, his sentence would have been lower by four years. Pet'r's Mem. in Support of Am. Mot. 5. His apparent contention is that *Gardner* would have required reversal of the 6-level increase in his base offense level, pursuant to U.S.S.G. § 2K2.1(a)(4), for his prior conviction for North Carolina common law robbery, dropping his total

offense level from 27 to 21 (*see* PSR ¶ 66) and his guideline range from 78 to 97 months to 41 to 51 months, using a criminal history category of II (*see* PSR ¶ 68). As can be seen, there is a 46-month drop (*i.e.*, 97 minus 51) in the top of guideline range when the base offense level is 14 rather than 20.

Claim Ten fails for numerous reasons. Petitioner presents no evidence substantiating his contention that the government knew in advance how the Fourth Circuit would rule in *Gardner*. He infers that the government knew based on the purported issuance of the decision in *Gardner* three days after defendant's sentencing. Needless to say, though, the relative timing of events in this case and issuance of the *Gardner* decision cannot reasonably be deemed to be evidence that the government knew how the Fourth Circuit would rule.

In any event, the temporal proximity of the issuance of the decision and the sentencing is not as close as petitioner posits. The decision in *Gardner* was actually issued, on 18 May 2016 (*see Gardner*, 823 F.3d at 793), almost two weeks after the sentencing, on 5 May 2016. Under petitioner's timing theory, a more apt comparison would be between the time of issuance of the decision and the time of the government's entry into the plea agreement, rather than the sentencing itself. The decision was issued over six months after the government entered into the plea agreement on 11 November 2015. Oral argument had not even occurred in *Gardner* when the government entered into the plea agreement; the argument took place over four months afterward on 24 March 2016 (*see Gardner*, 823 F.3d at 793).

Petitioner has also not shown that inclusion of the appeal waiver provision in the plea agreement was unique to his circumstance. In fact, it is the court's experience that appeal waivers are used in the vast majority of plea agreements in this district. For this and the other reasons

stated, Claim Ten is meritless. Amendment of petitioner's § 2255 motion to include it would therefore be futile.

### C. Request for Hearing and Appointed Counsel

As noted, in his amended motion, petitioner requests that he be given a hearing and appointed counsel, although it is not entirely clear whether he is referring to a hearing and appointment of counsel in the instant § 2255 proceedings or after the requested vacatur of his sentence. *See* Pet'r's Mem. in Support of Am. Mot. 5. Assuming petitioner is seeking this relief in the instant proceedings, his request fails. As determined above, a hearing is not required in this case. As to counsel, there is no right to appointed counsel in a § 2255 matter. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). In this case, "the interests of justice . . . [do not] require" the appointment of counsel because a hearing is not necessary; petitioner has demonstrated the ability to present his arguments, even if in order to do so he has required the assistance of others to whom he already has access; and the issues presented are not unusually complex. 28 U.S.C. § 3006A(a)(2)(B); *see*, *e.g.*, *Makwana v. United States*, Civ. Act. No. JFM-13-58, Crim. Act. No. JFM-09-43, 2013 WL 12226886, at *2 (D. Md. 15 Jan. 2013). Therefore, any request by petitioner for a hearing or appointment of counsel in the instant proceedings should be denied. Given the recommended dismissal of this proceeding, petitioner's request for a hearing and appointed counsel is moot to the extent that it is addressed to vacatur proceedings. For this and the other reasons set out, plaintiff's amended § 2255 motion should be denied.

## XI. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the government's motion (D.E. 88) to dismiss be ALLOWED; petitioner's §2255 motion (D.E. 82) and amended § 2255 motion (D.E. 99) be DENIED in their entirety; and this § 2255 proceeding be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 28 November 2018 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 14th day of November 2018.

James E. Gates
United States Magistrate Judge